# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3099-21

IN THE MATTER OF L.C.

_____

Submitted January 30, 2024 – Decided March 8, 2024

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. 0258-XTR-2022-1.

Faugno Weis Katcher Duarte, LLC, attorneys for appellant (Tamra Dawn Katcher, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (K. Charles Deutsch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

L.C.[1] appeals from a May 6, 2022 order granting the State's petition for a

---

[1] We use initials because "[a]ll records related to proceedings for [Final Extreme Protective Orders] are confidential and may not be disclosed to anyone other than the respondent . . . except if good cause is found by the court to release

Final Extreme Risk Protection Order (FERPO) entered under the Extreme Risk Protective Order Act of 2018 (Act), N.J.S.A. 2C:58-20 to -32.  We affirm.

I.

We glean the following facts from the record.  On February 10, 2022, the Saddle River Police Department (SRPD) responded to a call regarding an altercation between L.C. and his roommate, D.C.  The call was made by an individual who reported that D.C. came to his home, claimed he was just physically assaulted, and asked to use the phone.

The SRPD immediately met with D.C. and observed visible signs of his injuries, including a laceration on D.C.'s forehead and cuts on his hands.  D.C. told the police that when he returned home that night, L.C. took D.C.'s phone away from him, threw it on the lawn, and punched D.C. in the face and head.  D.C. stated he was able to leave the scene once L.C.'s girlfriend broke up the fight.

D.C. also told the police he believed L.C. initiated the fight because L.C. suspected D.C. "made a complaint to the [SRPD] . . . regarding commercial vehicles being parked" at their residence.  D.C. further stated he was "unsure if

such records."  Admin. Off. of the Cts., Admin. Directive #19-19, Guidelines for Extreme Risk Protective Orders, 9 (Aug. 12, 2019) (AOC Directive).

A-3099-21

[L.C.] suffer[ed] from . . . PTSD symptoms."

L.C.'s girlfriend informed the police she knew nothing about the altercation. She also stated "she was unsure if [L.C.] regularly t[ook] any medication that he . . . need[ed]."

The SRPD repeatedly tried to contact L.C. after learning he fled the scene. When their attempts failed, the police "determined a [w]elfare [c]heck needed to be conducted . . . to ensure [L.C.] was okay[,] based on what [D.C.] and [L.C.'s girlfriend] stated." Using a canine unit, the SRPD found L.C. at a neighbor's residence. The police then determined the fight between L.C. and D.C. was a domestic violence incident. They arrested L.C. and charged him with simple assault, N.J.S.A. 2C:12-1(a)(1).[2]

The next day, Detective Michael Cooper applied for and obtained a Temporary Extreme Risk Protective Order (TERPO) from a municipal court judge. Pursuant to the February 11, 2022 TERPO, officers seized and removed over thirty items from L.C.'s home, including firearms and ammunition.

The FERPO hearing proceeded on May 6. The State called Detective Cooper to testify. L.C. called his former direct supervisor, a Staff Sergeant from

---

[2] The charge was subsequently dismissed due to D.C.'s failure to appear in court.

A-3099-21

the United States Marine Corps (USMC), to testify.

In describing the February 10 incident, Detective Cooper acknowledged he "was not one of the officers that responded" to the scene, but because he "was the on-call detective that night," he "became involved in the case" "to review the criminal complaint[] as well as speak with [L.C.]." Cooper testified that after his review of "all the reports . . . dating back . . . many years," "it was determined . . . [the SRPD] should file for the TERPO."

Cooper stated that according to police records, L.C. contacted the SRPD in November 2014 to report his ex-girlfriend falsely accused him of physically assaulting her. According to Cooper, based on a "command investigation" into these allegations, a USMC corporal submitted recordings to the SRPD from L.C.'s ex-girlfriend wherein she stated L.C. "would commit mass murder and murder-suicide."

Cooper also testified that in August 2018, the SRPD responded to L.C.'s home regarding a dispute between L.C. and his sister. L.C.'s sister reportedly had mental health issues and told the police that L.C. stole her medication and locked it in his gun safe. The police investigated the allegation and found L.C.'s gun safe did not contain his sister's medication. Approximately two days later, L.C. requested a temporary restraining order (TRO) against his sister, and

A-3099-21

Cooper assisted L.C. in obtaining the TRO.

Next, Detective Cooper testified that in December 2018, he and other SRPD officers responded to L.C.'s home after L.C.'s girlfriend reported L.C. was "having a potential anxiety attack." When Cooper arrived, he observed L.C. "was shaking and . . . extremely anxious," and appeared to be experiencing a "very, very aggressive panic attack." Cooper stated L.C.'s "girlfriend . . . was rubbing the bottom of [L.C.'s] feet and . . . telling [Cooper that L.C.] . . . suffered from some PTSD from his time in the service." According to Cooper, L.C. experienced "everything that would constitute a full[-]blown panic attack" before L.C. was voluntarily transported to a local hospital.

Next, Cooper testified that in August 2021, he spoke with L.C. after an anonymous caller "reached out to [Cooper] to advise . . . that [L.C.] was seeing drones flying around" his home. When Cooper contacted L.C. about the reported drones, L.C. told Cooper "he believed that people were watching . . . him specifically, and that he s[aw the drones] often." L.C. also provided the detective with video footage "of what he believed was a drone . . . flying over his home," but Cooper saw no drones in the video.

L.C.'s witness testified he was L.C.'s supervisor in the USMC between 2012 and 2014 or 2015. The Staff Sergeant also stated he had no knowledge of

any investigations related to L.C.'s alleged misconduct during that period.

At the conclusion of the evidentiary hearing, Judge Foti orally granted the State's petition for a FERPO and issued a conforming order. On June 16, 2022, following L.C.'s appeal from the May 6 FERPO, Judge Foti issued a written amplification of her decision, pursuant to Rule 2:5-1(b).

In her cogent oral opinion, Judge Foti aptly noted that in deciding whether a FERPO should issue, she was "required to consider eight factors[,] and if [she] found] any of the eight factors[, she] c[ould] also consider the mental health factors . . . enumerated in the law." Next, the judge explained:

> the rules governing admissibility of evidence at trial . . . [do] not apply to the presentation and consideration of information at the FERPO hearing. Notwithstanding hearsay rules, the court may consider affidavits or documents submitted in support of a petition and may consider any information provided by the county prosecutor or designee.

The judge also recognized her decision could "not be based on hearsay alone," and there had to "be a residuum of legal and competent evidence in the record to support" the issuance of a FERPO.

Additionally, the judge assessed the credibility of the parties' witnesses, finding Detective Cooper provided "credible testimony" and that L.C.'s witness "testified credibly that he was not aware of" a report of L.C.'s alleged

6

misconduct in 2014.  But the judge also stated she was "not sure . . . [the Staff Sergeant's testimony was] dispositive of the fact that [such a] report was[ not] made."

Similarly, in her amplification letter, the judge credited Cooper's testimony, finding he "spoke clearly and answered all of counsel's questions directly and without hesitation," and "maintained good eye contact throughout his testimony."  But the judge further stated that while L.C.'s witness "also testified clearly and answered all of counsel's questions," he "seemed to lack knowledge of certain incidents involving [L.C.] and [the] police."  She explained the Staff Sergeant

> seemed to be unaware of incidents involving [L.C.]'s ex-girlfriend's reports to the [USMC] that [L.C.] physically assaulted her[,] and [of] threats emanating from [L.C.] that [he] would commit "mass murder" and "murder-suicide."[]  [The Staff Sergeant] could not testify concerning these events, nor could he testify about any follow-up investigation of these allegations.

Next, Judge Foti found the following factors under N.J.S.A. 2C:58-23(f) supported the issuance of a FERPO:  one ("history of threats or acts of violence . . . directed toward self or others"), two ("history of use, attempted use, or threatened use of physical force"), and five ("prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons,"

7

stalking, or domestic violence offenses). In finding factor one, Judge Foti referenced the February 10, 2022 incident, following which D.C. reported to the police that L.C. "physically assaulted him by punching him in the face and head." She noted the State produced exhibits documenting D.C.'s "visible signs of injury" from the altercation.

The judge also stated in her amplification letter that other facts militated in favor of finding factor one, including L.C.'s "history of troubling encounters with [the] police." Such encounters included the 2014 incident when L.C.'s ex-girlfriend reported he physically assaulted her and would commit "mass murder" and "murder-suicide." Further, the judge credited Detective Cooper's testimony regarding: (1) the August 2018 dispute between L.C. and his sister; (2) the December 2018 incident when the SRPD went to L.C.'s home following a report he might be suffering from an anxiety attack; and (3) the August 2021 incident when L.C. reported "multiple drones were flying over his home," yet "there were no drones visible to [the] police" on the video footage he supplied to Detective Cooper as proof of the incident.

Next, in finding factor two, the judge confirmed in her oral and written opinions that she "relied on the same findings of fact set forth in factor one to find factor two," noting L.C.'s "history of concerning and threatening behavior[]

culminat[ed] in violence against [his] roommate," as evidenced by "the photographs of [D.C.'s] injuries" the State produced at trial.

Finally, Judge Foti found factor five, explaining L.C. was previously arrested "for a violent disorderly persons/domestic violence offense" based on the February 10 assault. The judge acknowledged "[o]ne event on its own m[ight] cause . . . some hesitation, but when . . . view[ing] the totality of the circumstances," the State "met its burden by a preponderance of the evidence that [L.C.] pose[d] a danger to others by owning or possessing firearms." She further clarified in her amplified opinion that the State "sustained its burden" in establishing L.C. "pose[d] a significant danger of bodily injury to [him]self or others by owning or possessing a firearm," and thus, the FERPO was warranted.

## II.

On appeal, L.C. raises the following arguments:

POINT I

THE COURT BELOW ERRED BY RELYING ON HEARSAY THAT WAS UNSUPPORTED BY A RESIDUUM OF LEGAL AND COMPETENT EVIDENCE.

A-3099-21

POINT II

THE COURT ERRONEOUSLY RELIED ON IRRELEVANT EVIDENCE TO SUPPORT GRANTING THE FERPO AGAINST [L.C.].

POINT III

THE STATE FAILED TO MEET ITS BURDEN TO ESTABLISH THAT [L.C.] POSES A SIGNIFICANT DANGER OF BODILY INJURY TO HIMSELF OR OTHERS BY HAVING WEAPONS.

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). We are bound by the trial court's findings "when supported by adequate, substantial, credible evidence." Id. at 411-12. When evidence is testimonial, as in this case, and involves credibility questions, deference is "especially appropriate" because the trial judge observed the witnesses first-hand. Id. at 412.

The Act, also known as the "red flag law," "permits the emergent removal of weapons from any person who poses a danger to self or others." In re D.L.B., 468 N.J. Super. 397, 400-01 (App. Div. 2021). The Act was intended to address the growing number of mass shootings by removing firearms from those who have shown "red flags" indicative of future violence. Id. at 400-02.

Pursuant to its authority under N.J.S.A. 2C:58-31, our Supreme Court promulgated the AOC Directive to effectuate the purposes of the Act. See AOC

10

Directive at 1. In addition, based on its authority under N.J.S.A. 2C:58-32, the Office of the Attorney General adopted Attorney General Law Enforcement Directive No. 2019-2 to implement the law. See Off. of Att'y Gen., Law Enf't Directive No. 2019-2, Directive Pursuant to the Extreme Risk Protective Order Act of 2018 (Aug. 15, 2019) (the Directive).

In considering whether to grant a FERPO, a court must consider eight factors namely, whether an individual:

> (1) has any history of threats or acts of violence . . . directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force . . . against another person;
>
> (3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991[]" . . . ;
>
> (4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Victim's Assistance and Survivor Protection Act[]". . . ;
>
> (5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of [N.J.S.A. 2C:12-10], or domestic violence offense enumerated in section 3 of [N.J.S.A. 2C:25-19];
>
> (6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals

or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

[N.J.S.A. 2C:58-23(f).]

Prior to issuing a FERPO, however, the court must also consider "all relevant evidence," including if the individual: "has recklessly used, displayed, or brandished a firearm;" "has an existing or previous extreme risk protective order issued against [them];" and "has previously violated an extreme risk protective order issued against [them]." AOC Directive, attach. 1, Guideline 3(d)(9) to (11).

If a court finds at least one of the eleven "behavioral" factors, it may then consider four mental health factors, specifically whether the subject of the hearing:

> (12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;
>
> (13) has received or is receiving mental health treatment;
>
> (14) has complied or has failed to comply with any mental health treatment; and

12

> (15) has received a diagnosis of a mental health disorder.
>
> [D.L.B., 468 N.J. Super. at 404 (citing AOC Directive, attach. 1, Guidelines 3(d), 5(d)) (regarding TERPOs and FERPOs, respectively).]

No single factor is determinative. Rather, after weighing the appropriate factors, "[t]he court shall issue the FERPO . . . if it finds 'by a preponderance of the evidence at the hearing that the [individual] poses a significant danger of bodily injury to the [individual's] self or others' by possessing a firearm." Id. at 406-07 (quoting N.J.S.A. 2C:58-24(b)).

"[T]he rules governing admissibility of evidence at trial shall not apply to the presentation and consideration of information at the [FERPO] hearing." Id. at 406 (second alteration in original) (quoting AOC Directive, attach. 1, Guideline 5(c)). In fact, when determining whether to grant a FERPO, the court must not only consider the N.J.S.A. 2C:58-23(f) factors "as well as any other relevant evidence," N.J.S.A. 2C:58-24(c), but Guideline 5(d) requires the court to "consider all relevant evidence, including the factors referenced in Guideline 3(d)(1) to (11)," AOC Directive, attach. 1, Guideline 5(d), and "'information obtained through the performance of [the State's] responsibilities' under the Act," D.L.B., 468 N.J. Super. at 419 (quoting AOC Directive, attach. 1, Guideline 5(e)). However, a FERPO "order 'cannot be based on hearsay alone'

and 'there must be a residuum of legal and competent evidence in the record to support' the court's order." D.L.B., 468 N.J. Super. at 406 (quoting Weston v. State, 60 N.J. 36, 51 (1972)).

Applying these principles, we affirm the challenged FERPO substantially for the reasons set forth in Judge Foti's well-reasoned and comprehensive oral and written opinions. Not only are her factual and credibility findings entitled to our deference, as they are amply supported in the record, but we are convinced she properly applied the factors under the Act and the AOC Directive.

Lastly, we reject L.C.'s argument that the judge impermissibly relied on hearsay in issuing the FERPO. Indeed, the record reflects the judge did not exclusively rely on hearsay evidence, but instead, properly considered hearsay evidence, documentary evidence (including pictures of D.C.'s injuries), and Detective Cooper's credible testimony regarding his direct interactions with L.C. as grounds supporting the entry of the FERPO.

To the extent we have not specifically addressed any of L.C.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-3099-21